UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD SUCH, next friend to
BILLY RAY MALDONADO,

    Petitioner,

v.

JAMES A. YATES, warden,

    Respondent.

No. C 07-102 MHP (pr)

**ORDER DENYING HABEAS PETITION**

# INTRODUCTION

Billy Ray Maldonado, by his next friend Richard Such, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be denied.

# BACKGROUND

This habeas action stems from a burglary conviction. The California Court of Appeals described the evidence regarding the crime.

> There was evidence at trial of the following facts: On November 17, 2003, shortly before 11:00 p.m., Lori Houston and her three sleeping children were in their Santa Rosa home. Through the sliding glass doors of her bedroom Houston observed movement outside, and ultimately noticed the tab of a jacket zipper outside the glass doors. Turning off the bedroom light, she saw defendant 25 feet away. She called 911 and stayed on the phone with the dispatcher observing defendant for 10 minutes. Santa Rosa Police Officers Martin and Bates-Ferrara responded, walked to the back yard where Martin shined his flashlight on defendant, identified himself as police, and ordered defendant to freeze. The two officers chased defendant as he ran down the street and ultimately apprehended and arrested him.

> On top of a knit cap that had fallen from defendant's head, Martin found a pair of yellow silk panties. A search of defendant's pockets disclosed wads of toilet paper, a handkerchief, and a pair of white cotton panties. Retracing the path of the chase, Martin found a pair of red silk panties near Houston's house. Houston testified that the two pairs of silk panties had been in her garage in a bag of clothing she had collected to donate to Goodwill. She was still using the white cotton underwear that would have been either in the washer or dryer in the garage, the laundry basket in the garage, or in her bedroom drawer. Nothing else had been taken from the garage or any other part of the house.
>
> The garage connects to the house. It has an overhead door to the driveway that raises manually and is often unlocked.

Cal. Ct. App. Opinion, pp. 1-2.

Following a jury trial in Sonoma County, Maldonado was convicted of burglary of an inhabited dwelling house, unlawful loitering, and resisting an officer. See Cal. Penal Code §§ 148(a)(1), 459, 460(a), 647(h). Sentence enhancement allegations that he had suffered four prior strike convictions, a prior serious felony convictions, and two prior terms were found true. See Cal. Penal Code §§ 667(a)(1), 667.5(b), 1170.12. The court denied a request to dismiss the prior strike convictions. Maldonado was sentenced to 25 years to life plus seven years in prison.

Maldonado appealed. His conviction was affirmed by the California Court of Appeal and his petition for review was denied by the California Supreme Court.

He then filed this action. The court issued an order to show cause why the writ should not issue. Respondent has filed an answer and Maldonado has filed a traverse. The matter is ready for a decision on the merits of the petition.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Sonoma County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state

2

judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). State court remedies were exhausted for the three claims remaining after the one unexhausted claim was dismissed.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

**DISCUSSION**

A.  Sufficiency Of The Evidence Of Burglary

To prove the crime of burglary, the prosecution was required to prove beyond a reasonable doubt that Maldonado entered a residence and at the time of the entry "had the specific intent to steal and take away someone else's property, and intended to deprive the owner permanently of that property." CALJIC 14.50.  Maldonado claims that his right to due process was violated because the evidence was insufficient to support the burglary conviction.  Specifically, he attacks the evidence on the intent element, claiming that there was not sufficient evidence that he entered the garage with the intent to steal.  He also claims that there was insufficient evidence he intended to permanently deprive the victim of her property.

The California Court of Appeal rejected the insufficient evidence claim.  That court noted that the prosecution's story of the criminal episode had changed between trial and appeal: the prosecutor had argued at trial that Maldonado entered the garage to get the homeowner's underwear so that he could hold them as he stood outside her bedroom window and sexually gratified himself (a gratification that apparently never materialized because the police arrived), RT 141, while the state's attorney on appeal argued that there was no indication that the garage was the final destination and that Maldonado may have intended to continue through the garage into the house but stopped when he came upon the panties in the garage.  Cal. Ct. App. Opinion, pp. 3-4.  The appellate court explained that, although it was unclear from the evidence why Maldonado entered the home, "from the facts that defendant unlawfully entered the garage, removed belongings found there, and fled when the police arrived, it may be inferred that he entered for the purpose of taking something."  Id. at 4 (citations omitted).  The court rejected Maldonado's argument that he was only seeking shelter when he entered the garage, as it was up to the jury to decide whether the evidence proved Maldonado's guilt beyond a reasonable doubt. Maldonado's argument that the evidence did not support an inference that he intended to deprive the victim of her panties permanently or for a temporary but unreasonable time also failed to persuade the state

1  appellate court:  there was no evidence of any intention to return the panties, and the jury
2  could infer from the fact of taking that Maldonado intended to keep the items.  It thus was
3  unnecessary to determine whether using them for the speculated purpose of sexual
4  gratification would have been for an unreasonable time or would have eliminated any value
5  they had to the victim.  See id. at 5.

6        The "Due Process Clause protects the accused against conviction except upon proof
7  beyond a reasonable doubt of every fact necessary to constitute the crime with which he is
8  charged."  In re Winship, 397 U.S. 358, 364 (1970).  A federal court reviewing collaterally a
9  state court conviction does not determine whether it is satisfied that the evidence established
10 guilt beyond a reasonable doubt, but rather determines whether, "after viewing the evidence
11 in the light most favorable to the prosecution, any rational trier of fact could have found the
12 essential elements of the crime beyond a reasonable doubt.'"  Jackson v. Virginia, 443 U.S.
13 307, 319 (1979).  Only if no rational trier of fact could have found proof of guilt beyond a
14 reasonable doubt may the writ be granted.  Id. at 324.  The "prosecution need not
15 affirmatively 'rule out every hypothesis except that of guilt,'" and the reviewing federal court
16 "'faced with a record of historical facts that supports conflicting inferences must presume –
17 even if it does not affirmatively appear in the record – that the trier of fact resolved any such
18 conflicts in favor of the prosecution, and must defer to that resolution.'"  Wright v. West, 505
19 U.S. 277, 296-97 (1992) (quoting Jackson, 443 U.S. at 326). A federal habeas court applies
20 the standards of Jackson with an additional layer of deference under the AEDPA, generally
21 asking whether the state court's decision reflected an unreasonable application of Jackson and
22 Winship to the facts of the case.  Juan H. v. Allen, 408 F.3d 1262, 1274-75 (9th Cir. 2005),
23 cert. denied, 546 U.S. 1137 (2006).

24       The California Court of Appeal's decision was not contrary to or an unreasonable
25 application of clearly established federal law.  The state court used the applicable federal
26 standard, even if it did not mention Jackson v. Virginia or any other specific federal case, and
27 reasonably rejected the claim.  See Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (not
28 necessary to cite Supreme Court cases for § 2254(d) to apply).  Viewing the evidence in the

light most favorable to the prosecution and drawing all reasonable inferences therefrom in the prosecution's favor, a rational jury could have found intent proven beyond a reasonable doubt.  A rational trier of fact could have found that Maldonado entered the garage with the intent to steal based on the evidence that he made an unauthorized entry, took items from the garage and fled upon seeing the police.  The circumstantial evidence that he had entered the garage at night without the homeowner's permission supported the conviction, as "burglarious intent could be reasonably and justifiably inferred from the unlawful and forcible entry alone." People v. Stewart, 113 Cal. App. 2d 687, 691 (Cal. Ct. App. 1952). The flight upon discovery by police and possession of property from the premises entered greatly strengthened the inference that the entry had been with the intent to steal.  See, e.g., People v. Martin, 275 Cal. App. 2d 334, 339 (Cal. Ct. App. 1969), cert. denied, 397 U.S. 1026 (1970) (evidence that defendant and another man were seen by police running from the scene of the burglary supported inference of intent to commit theft in the entered premises); People v. Jordan, 204 Cal. App. 2d 782, 786-87 (Cal. Ct. App. 1962) (even if no crime is committed after unlawful entry, a circumstance such as unexplained flight after being hailed by an occupant of the building strengthens the inference that the entry was made with the intent to commit theft); cf. Turner v. Marshall, 63 F.3d 807, 816 (9th Cir. 1995), overruled on other grounds, Tolbert v. Page, 182 F.3d 677 (1999) (the intent to steal necessary for robbery could be inferred from evidence that defendant had taken the property of another).

      Maldonado's argument shows that there are different inferences the jury might have drawn, but it is long past the point where those inferences can be drawn.  His argument would be much better suited for a trial's closing argument than for an argument on appeal or in habeas, due to the respective roles of the jury and courts.  On habeas review, the federal court is not entitled to indulge even rational inferences "if a rational trier of fact could have drawn inferences supporting the conviction." Payne v. Borg, 982 F.2d 335, 338 (9th Cir.), cert. denied, 510 U.S. 843 (1993).

      Maldonado attempts to disprove the prosecution's theory that he entered with the intent to obtain the homeowner's underwear to hold them while he sexually gratified himself.

6

This is a misguided effort, as a reviewing court only considers whether the evidence was sufficient to sustain a burglary conviction and not whether the evidence was sufficient to support the prosecutor's theory of the case.   As the California Court of Appeal explained, even though the prosecutor had one theory at trial and the state's attorney suggested a different theory on appeal, the evidence was unclear on Maldonado's ultimate plan and, as the state appellate court intimated, that difference did not matter for purposes of evaluating the sufficiency of the evidence to support the conviction for burglary.   The crime charged was not entry with intent to steal underwear, but instead was burglary, which requires an intent to steal – without reference to the particular object to be stolen.  This also means that the fact that Maldonado stole things of low monetary value, when other items of greater monetary value were available, does not negate the intent to steal.  A reasonable jury could infer that he entered the garage with the intent to steal whatever was most appealing and found the panties most appealing.

     Maldonado also argues that there was insufficient evidence that he had the intent to steal at any time, apparently urging that the nature of the use of the panties hypothesized by the prosecutor at trial (i.e., for sexual gratification) was a temporary use.  This argument fails.  First, there was sufficient evidence to support a finding of intent to permanently deprive.  There was no evidence that defendant of any intent to return the panties and the jury reasonably could infer from the taking of the objects that he intended to keep them.  Second, there was no evidence that the panties could only be used for one episode of sexual gratification; he could take them with him for later episodes.  In fact, Maldonado did not discard the items until he was fleeing from the police, which is far more consistent with trying to avoid apprehension or incrimination than that he only wanted them temporarily.  Maldonadno has not identified any authority for the unusual notion that there is no intent to permanently deprive if a burglar or thief does the rather common act of discarding the stolen items as he flees from police.  Finally, to the extent Maldonado is trying to focus on what was going through his mind as he held the panties in the back yard, he confuses the issue because the intent for burglary is measured at the time of entry into the premises.   "The

7

1  crime of burglary was completed and consummated the minute the defendant entered the []
2  residence with intent to commit theft." People v. Stewart, 113 Cal. App. 2d at 691.

3   Maldonado's argument that he entered looking only for shelter has zero evidentiary
4  support and is undermined by the evidence that he took three pair of panties and the evidence
5  that he was startled by police as he stood outside the victim's bedroom window.  The
6  circumstantial evidence is not evaluated piece by piece, but instead the totality of the
7  circumstances are considered.  See People v. Martin, 275 Cal. App. 2d at 339.  Under the
8  totality of these circumstances, an inference that he entered looking for shelter would be an
9  unreasonable inference.  Not only was there no evidence of entry for the purpose of seeking
10 shelter, defense counsel did not even argue in closing argument that such an inference should
11 be drawn by the jury.

12  Maldonado's arguments about what the evidence might show and how a jury might
13 view the evidence differently do not aid him because this court presumes that the jury
14 resolved any conflicts in the evidence in favor of the prosecution.  The California Court of
15 Appeal reasonably found that there was sufficient evidence of intent for the burglary
16 conviction.  Maldonado is not entitled to the writ on this claim.

17 B.   Instructional Error Claim Regarding Circumstantial Evidence

18  Maldonado contends that instructing the jury with CALJIC 2.01[1] instead of CALJIC
19 2.02[2] regarding circumstantial evidence violated his right to due process.

20  The California Court of Appeal rejected the claim for both a procedural reason and on
21 the merits.  The procedural reason for rejecting the claim was that the defense had failed to
22 object to the instruction.  Cal. Ct. App. Opinion, p. 5.  As to the merits, CALJIC 2.01 "was
23 the correct instruction here because the prosecution was relying on circumstantial evidence to
24 establish more than specific intent, namely, that defendant had entered the garage."  Cal. Ct.
25 App. Opinion, p. 5 (citing People v. Marshall, 13 Cal. 4th 799, 849 (Cal. 1996)).

26  The federal claim of instructional error is procedurally barred.  A federal court will
27 not review a question of federal law decided by a state court if the decision rests on a state
28 law ground that is independent of the federal question and adequate to support the judgment.

Coleman v. Thompson, 501 U.S. 722, 729 (1991).  The procedural default doctrine forecloses federal review of a state prisoner's federal habeas claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule.  See id. at 729-30.  The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a federal petition for procedural default where there was a complete failure to object at trial.  See Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir.), cert. denied, 528 U.S. 965 (1999); see e.g., Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (barring review of jury instruction error claim because no contemporaneous objection); Vansickel, 166 F.3d at 957-58 (barring review of challenge to denial of peremptory challenges because no contemporaneous objection).  Maldonado's failure to object to the use of CALJIC 2.01 at trial bars his claim that its use violated his right to due process.  Even if one overlooked the procedural default, the claim fails on the merits as discussed next.

      A state trial court's failure to give a jury instruction does not alone raise a ground cognizable in a federal habeas corpus proceeding.  See Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988).  The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991); Dunckhurst, 859 F.2d at 114.  Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury.  See Duckett v. Godinez, 67 F.3d 734, 745 (9th Cir. 1995), cert. denied, 517 U.S. 1158 (1996).  If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict before granting habeas relief.  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

      The instruction given was proper under state law.  "Use of CALJIC No. 2.01, rather than 2.02, is proper unless the only element of the offense that rests substantially or entirely on circumstantial evidence is that of specific intent or mental state."  People v. Marshall, 13 Cal. 4th at 849.  Although Maldonado now contends that the only true issue in his case was

his intent, he had not stipulated at trial that the other element was established. The prosecution had to prove entry and did so with circumstantial evidence. Some of the areas of examination for the witnesses showed that the case involved more than the single issue of whether Maldonado intended to steal when he entered. Defense counsel inquired of the victim whether she knew when exactly she put the panties in the Goodwill bag, RT 49, and whether she was sure that the clothing had not yet been sent to Goodwill, RT 50-51; these points might be relevant to whether the panties were even taken from inside her garage. Defense counsel also asked the victim whether her garage door sometimes was left open, RT 53; this might be relevant to whether there was an entry. The prosecution asked the police officer whether the panties recovered were dry, RT 72, 76-77; this might be relevant to whether they had been in the garage at all that night. Defense counsel asked the police officer whether he saw Maldonado drop or throw anything away as he was being chased by police, RT 81; this might be relevant to whether he had possession of the panties. The instructions were given before counsel gave closing argument, and certainly at the close of evidence there was no concession on all elements except intent. Even in the closing argument, the defense attorney did not concede that Maldonado had entered the garage, but simply recognized that her efforts were better directed to the potentially stronger issue of lack of intent. See RT 155-56. There was no direct evidence that Maldonado had entered the garage, e.g., no witness testified to seeing him in there. The evidence of Maldonado's possession of items that had been inside the garage was used as circumstantial evidence to prove that he had earlier been in the garage. CALJIC 2.01 was the proper instruction for Maldonado's case.

The use of CALJIC 2.01 was not only proper under state law, it did not so infect the trial that Maldonado was deprived of the fair trial guaranteed by the Due Process Clause. The jury charge adequately guided the jury on the consideration of circumstantial evidence, as it pertained to all the elements, including the required intent. The fact that the jury asked a question pertaining to specific intent does not show that the instructions given were erroneous. The jury was given the standard reasonable doubt instruction, CALJIC 2.90, see

RT 131, was instructed on the elements of burglary, RT 132, was instructed that there had to be a union of the bad act and specific intent, RT 131, and was instructed on the consideration of circumstantial evidence in CALJIC 2.01.  Despite Maldonado's suggestion to the contrary, when read as a whole, the instructions given informed the jury that if the circumstantial evidence of intent permitted two reasonable interpretations, one of which pointed to Maldonado's guilt and other to innocence, the jury had to reject the interpretation that pointed to guilt.  Arguably, that instruction may have given him more benefit than that which was constitutionally required, as the Supreme Court has rejected an argument that circumstantial evidence requires a separate special instruction about inferences.  See Holland v. United States, 348 U.S. 121, 139-40 (1955) (direct appeal case rejecting contention that the judge had to instruct that where prosecution's evidence is circumstantial, it must be such as to exclude every reasonable hypothesis other than that of guilt: "the better rule is that where there the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect").  The instructions given did not violate Maldonado's right to due process.  He is not entitled to the writ on this claim.

C.     Trial Court's Response To Jury's Questions

The final claim concerns the court's responses to a jury inquiry during deliberations.  The jury sent two questions to the court, both of which were addressed at the same time.  The jury asked: "What is required to prove specific intent?" and "is possession of stolen property proof of intent?"  RT 171.  The trial judge addressed the first question (i.e., "What is required to prove specific intent?") by directing the jurors to CALJIC 3.31 regarding the concurrence of act and specific intent, and said that the specific intent required was included in the definition of each of the crimes, and the definition of burglary showed that burglary was a specific intent crime.  The court then inquired: "Is that the question, or are you asking us – are you asking the Court, could you tell me what facts prove specific intent?" RT 171.  After conferring, the jurors started to ask the trial judge to consider the jury's second question, and the court responded: "Okay.  The second question is more, what facts.  It says, 'Is possession of stolen property proof of intent?'  I can't answer that question.  That's up to you." RT 172.

1  A juror said that the second question was "the sticking point." RT 172. The judge
2  responded: "I got to be really careful because – I can't know what you're doing in there. I'm
3  not here to tell you what to do. I'm not a juror. Legally it's up to you. You've got the
4  instructions and the law. Where the facts apply to the law, that's your call." RT 172.
5  Neither defense counsel nor the prosecutor raised any objection.

6  The California Court of Appeal rejected Maldonado's claim that the court had erred in
7  its response. Cal. Ct. App. Opinion, pp. 6-7. The court rejected the claim for the procedural
8  reason that defendant had failed to object and rejected the claim on the merits. The court
9  disagreed with Maldonado's assertion that the first question was "crying out for the giving of
10 CALJIC No. 2.02."

> [T]he jury's question, as framed, was unanswerable, and the correct rules for considering circumstantial evidence were included in CALJIC No. 2.01. While under the circumstances a judge might properly have read CALJIC No. 2.02 in response to the question, certainly the court was not required to do so, especially when not requested by either party. Moreover, it is apparent from the exchange with the jury that the second question went to the information the jurors were seeking, and the court quite properly told the jury it was for them to evaluate what the evidence proved. Unlike the situation in Bollenbach v. United States (1946) 326 U.S. 607, there was no error in the court's previous instructions that required correction or clarification. 'Where, as here, the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information." (People v. Gonzalez (1990) 51 Cal. 3d 1179, 1213.)

18 Cal. Ct. App. Opinion, pp. 6-7. The state appellate court also rejected the argument that the
19 trial court should have given CALJIC 2.15 regarding possession of stolen property. That
20 instruction applied when a defendant's possession of the property was unexplained, which it
21 was not here since it was clear that he was the person who entered the garage and took the
22 property. Cal. Ct. App. Opinion, pp. 7-8.

23 Maldonado's failure to object to the trial judge's response to the jury's questions bars
24 his claim that the response violated his right to due process. See Vansickel, 166 F.3d at 957-
25 58. Even if one overlooked the procedural default, the claim fails on the merits as discussed
26 next.

27 When a jury makes known its difficulties by asking a question, the court "should clear
28 [the jury's difficulties] away with concrete accuracy." Bollenbach v. United States, 326 U.S.

12

1  612, 612-13 (1946).  In <u>Bollenbach</u>, the Court to set aside the conviction when the judge's
2  response to the jury's inquiry was not only quite cursory but was "simply wrong" on the law.
3  <u>Id</u>. at 613.  Not every failure to fully satisfy a jury's request for clarification or guidance
4  supports relief.  If the jury has been adequately instructed, and the trial judge responds to a
5  jury's question by directing the jury's attention to the particular point in the constitutionally
6  adequate instructions that answers its inquiry, due process is satisfied.  <u>See</u> <u>Weeks v.</u>
7  <u>Angelone</u>, 528 U.S. 225, 234 (2000).

8        Although the trial court's response did not directly respond to the jury's questions at
9  Maldonado's trial, the response was not erroneous and certainly was nowhere near the
10  "manifest misdirection" that occurred in <u>Bollenbach,</u> 326 U.S. at 614.   The response to the
11  first question was adequate in that it directed the jury where to find information about the
12  necessary intent in the instructions that already had given to the jury.  The judge's response to
13  the second question was not particularly helpful to the jury, but it was not improper under the
14  circumstances.  The judge astutely noticed that the jurors were essentially trying to get him to
15  do their job, and gently told them that he could not do it.  That did not violate due process.
16  <u>See</u> <u>Arizona v. Johnson</u>, 351 F.3d 988, 994 (9th Cir. 2003), <u>cert. denied</u>, 543 U.S. 836 (2004)
17  (judge must be careful not to invade jury's province as fact-finder); <u>see generally</u> <u>id.</u> at 993-
18  98 (direct appeal case discussing standards under Constitution as well as those to be enforced
19  in appellate court's supervisory power over lower courts in considering judicial responses to
20  jury inquiries).

21        Maldonado either misunderstands the jury's question or the state of the evidence,
22  because his argument seems to assume that the <u>only</u> evidence of intent was his possession of
23  the panties, but the circumstantial evidence also included his flight upon discovery by the
24  police, his unauthorized entry into the garage, and his discarding the panties during his
25  efforts to flee the police.  As the state appellate court explained, this was not a case where the
26  possession of stolen property was unexplained, so CALJIC 2.15 was not required.
27  <u>Bollenbach</u> requires the court to clear up jury difficulties, but that case does not stand for the
28  proposition that the trial judge should invade the jury's province to do so.  The most correct

answer in theory to the question of whether "possession of stolen property is proof of intent" is "sometimes," but giving that answer likely would have resulted in a claim that the trial judge invaded the province of the jury.  The trial judge did not violate due process by declining to do so.

Even if CALJIC 2.15 should have been given sua sponte as Maldonado now argues, the failure to give it was certainly harmless.  CALJIC 2.15 states that possession of recently stolen property "is not by itself sufficient to permit an inference that the defendant is guilty" of burglary; before guilt may be inferred, there must be at least slight corroborating evidence tending to prove guilt.  Here there was significant corroborating evidence in the form of "the attributes of possession – time, place and manner," CALJIC 2.15, in that Maldonado was observed late at night lurking outside the bedroom window of the owner of the underwear he possessed.  There also was more than slight corroborating evidence regarding "opportunity to commit the crime," id., in that there was an unlocked garage from which the panties had been taken, and his "conduct" in that he tried to flee upon detection by police that corroborated the evidence of possession as supporting an inference of intent.  Maldonado is not entitled to the writ on this claim.

## CONCLUSION

The petition for writ of habeas corpus is DENIED on the merits.

Within **five days** of the date of this order, next friend Richard Such must inform Maldonado that the petition for writ of habeas corpus has been denied and judgment entered.

The clerk shall close the file.

IT IS SO ORDERED.

DATED:  November 14, 2008

Marilyn Hall Patel
United States District Judge

# **NOTES**

1.   CALJIC 2.01, which <u>was</u> given to the jury, states:

However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion. [¶] Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt.  In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt. [¶]  Also, if the circumstantial evidence as to any particular count permits two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, you must adopt that interpretation that points to the defendant's innocence, and reject that interpretation that points to his guilt. [¶] If, on the other hand, one interpretation of this evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable.

2.   CALJIC 2.02, which <u>was not</u> given to the jury, states:

The specific intent . . . with which an act is done may be shown by the circumstances surrounding the commission of the act.  However, you may not find the defendant guilty of the crime charged . . . unless the proved circumstances are not only (1) consistent with the theory that the defendant had the required specific intent . . ., but (2) cannot be reconciled with any other rational conclusion. [¶] Also, if the evidence as to any specific intent . . . permits two reasonable interpretations, one of which points to the existence of the specific intent . . . and the other to its absence, you must adopt that interpretation which points to its absence.  If, on the other hand, one interpretation of the evidence as to the specific intent . . . appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable.